**Gregory DOYLE, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 3:04CV563JHTS.**

United States District Court, M.D. Florida, Jacksonville Division.

March 17, 2005.

Erik William Berger, Law Office of Erik S. Berger, Jacksonville, FL, for Plaintiff.

Susan R. Waldron, U.S. Attorney's Office Middle District of Florida, Tampa, FL, for Defendant.

## OPINION AND ORDER [1]

SNYDER, United States Magistrate Judge.

This cause is before the Court seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying a request for waiver of overpayment of Supplemental Security Income (SSI) benefits under the Social Security Act. Administrative remedies have been exhausted and the case is properly before the Court.

It appears undisputed that Gregory Doyle erroneously received SSI payments for a period of time. *See* Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. # 7; Memorandum); Memorandum in Support of the Commissioner's Decision (Doc. # 13; Memorandum in Support) at 2. In 2000, he requested that overpayment recovery be waived. *See* Transcript of Administrative Proceedings (Tr.) at 29–36. After this request was denied initially and upon further consideration, Administrative Law Judge Gerald F. Murray (ALJ) conducted a hearing on April 17, 2002. At the hearing, testimony was given by Plaintiff, who was not represented. In a Decision dated October 8, 2002, the ALJ found Mr. Doyle ineligible for a waiver of the overpayment. *Id.* at 15, 17. The Appeals Council concluded no basis for review existed, and the Commissioner's decision became final.

### I. Standard of Review

The Commissioner's final decision may be reviewed by a district court pursuant to 42 U.S.C. § 405(g). "[F]actual findings

---

1. The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. *See* Notice, Consent, and Order of Reference—Exercise of Jurisdiction by a United States Magistrate Judge (Doc. # 12).

are conclusive if ... supported by 'substantial evidence,'" but the application of legal principles is examined "with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir.2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)); *see also Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir.1993) ("[N]o presumption of validity attaches to the ... determination of the proper legal standards to be applied in evaluating claims.").

■■■■ Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). "'If the Commissioner's decision is supported by substantial evidence, [the reviewing court] must affirm, even if the proof preponderates against it.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005) (per curiam) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.2004)); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir.2003) (per curiam). In determining whether substantial evidence supports a finding, portions of the transcript are not viewed in isolation, but are examined for their impact upon "the record as a whole." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir.1997). However, the existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached. *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir.1994).

## II. Summary of Argument

Mr. Doyle raises one issue. It is asserted the ALJ erred in "finding that [he] was

'at fault' in causing an overpayment[.]" Memorandum at 12.

## III. Analysis

According to Plaintiff, the ALJ's determination "is not supported by substantial evidence as the record does not contain any information to support the position that [he] knew or should have known that his benefits should have completely stopped the month he began working." *Id.* at 6.

The Commissioner has statutory authority to make appropriate provisions for recovery of overpayments "with a view to avoiding penalizing [the erroneously paid] individual ... who was without fault in connection with the overpayment[.]" 42 U.S.C. § 1383(b)(1)(B). If the individual was without fault, the excess payment should stand where "adjustment or recovery on account of such overpayment ... would defeat the purposes of this subchapter, or be against equity and good conscience, or (because of the small amount involved) impede efficient or effective administration of this subchapter[.]" *Id.; see also* 20 C.F.R. § 416.550. In determining the existence of fault, the Social Security Administration will look to "all the pertinent circumstances surrounding the overpayment in the particular case." 20 C.F.R. § 416.552.

The Social Security Administration considers the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability

to comply with the reporting requirements (e.g., age, comprehension, memory, physical and mental condition). In determining whether an individual is without fault based on a consideration of these factors, the Social Security Administration will take into account any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual may have. Although the finding depends on all of the circumstances in the particular case, an individual will be found to have been at fault in connection with an overpayment when an incorrect payment resulted from one of the following:

(a) Failure to furnish information which the individual knew or should have known was material;

(b) An incorrect statement made by the individual which he knew or should have known was incorrect (this includes the individual's furnishing his opinion or conclusion when he was asked for facts), or

(c) The individual did not return a payment which he knew or could have been expected to know was incorrect.

*Id.*

The ALJ is required to consider all of the factors bearing upon fault. *Harzewski v. Chater,* 977 F.Supp. 217, 223 (W.D.N.Y. 1997). In addition, the judge must fully develop the record in regard thereto and "state clearly [his] rationale for the conclusions [ ]he draws so that, if appealed, [his] decision may be given appropriate judicial review." *Id.*

In his Decision, the ALJ focused on Mr. Doyle's having "reported his return to work to the Administration." Tr. at 14. The judge reasoned that his continued acceptance of SSI checks "even though the amount of the checks had not changed" evidenced his awareness "that his wages affected his [SSI] checks and he should have known to re-contact the Social Security Administration and to not cash the checks." *Id.* at 14–15. Thus, the overpayment had resulted from Claimant's own fault. *Id.* at 15.

 It is not apparent how Claimant's reporting a return to work shows that he knew his benefits would thereby be terminated. Under certain circumstances, an individual may well assume that if his monthly payment amount remains unchanged after reporting a return to work, his earnings have not risen to a level that would result in ineligibility for that amount. While in general the overpaid individual bears the burden of proving lack of fault, *Coulston v. Apfel,* 224 F.3d 897, 900 (8th Cir.2000) (per curiam), "when there is no actual evidence that a claimant received notification ... of the SSA guideline limitation then the claimant is 'without fault.'" *McInnis v. Barnhart,* 336 F.Supp.2d 912, 917 (N.D.Iowa 2004). Here, there is no evidence Mr. Doyle was notified as to what amount he could earn and still be eligible for full benefits. The judge's opinion, expressed at the hearing, that it was difficult for him "to see how [Claimant] could expect to" continue receiving SSI despite a "pretty good income[,] Tr. at 96–97, may reflect his own detailed understanding of the regulations, but it does nothing to establish Plaintiff was ever notified or was otherwise aware of how much money he could earn and retain eligibility."

The ALJ did not inquire into Plaintiff's understanding of the system. After the judge declared it appeared to him Claimant "certainly should have known that get-

ting those checks was inappropriate[,]" *id.* at 97, Mr. Doyle's attempted response was abbreviated by the ALJ's description of his own understanding of SSI's main purpose. The ALJ then transitioned into another topic, evoking a response to that, *see id.*, and the record was never fully developed as to Mr. Doyle's knowledge regarding the impact of income on eligibility.

The judge at one point in his Decision attributed to Mr. Doyle an admission of knowledge that his benefits should not have remained the same. *Id.* at 15. While this would certainly satisfy the fault standard, the alleged admission does not exist in the record.[2] The Commissioner argues Plaintiff's claim he was told at one stage it was unknown whether he would lose benefits, *see id.* at 30, shows he should have known he was supposed to lose them. Memorandum in Support at 6; *see also* Tr. at 15. Being told one's status is not yet known creates neither knowledge of entitlement nor knowledge of a lack thereof. Indeed, Claimant's statement that at one point his case worker told him he "would still be able to receive SSI[,]" Tr. at 39, also stands unrefuted.

■ Similarly, that a claimant has reported getting a job does not automatically establish that he should know his benefits eligibility would actually be affected. As already mentioned, the Commissioner has failed to produce any evidence Claimant was notified as to how much he could earn and still continue receiving checks. Without such notice, it cannot be expected an individual would know the contents of earnings tables or the formulae to be applied. Recognition that earnings poten-

tially make one ineligible for benefits, standing alone, does not justify imputing knowledge or constructive knowledge of ineligibility. *Cf. Ahrens v. Bowen*, 852 F.2d 49, 55 (2d Cir.1988) (awareness of potential legal dispute as to eligibility does not mean individuals could be expected to know payments incorrect). Considering the record as a whole, Mr. Doyle's continued receipt of SSI benefits following proper notification to the administration of his employment, combined with his unrebutted statement he was never informed as to what impact his earnings should have had, indicates he reasonably believed the unaltered payouts were appropriate.

Defendant's next assertion relates to whether claimants have a duty to perform their own research once they have done their part in reporting employment to the administration, but have not been contacted with a definitive pronouncement regarding continuing eligibility (aside from the continued issuance of checks). The Commissioner argues that, even if Claimant did not have reason to know he would lose his SSI, his awareness the administration was looking into the possibility the "benefits could be changed ... would have placed Plaintiff on notice that he needed to follow up on the matter before cashing any SSI checks." Memorandum in Support at 6; *see also* Tr. at 15 (noting Claimant did not try "to confirm the check amounts were correct"). This contention is not totally devoid of appeal. Nevertheless, it is inadequate to support the ALJ's basis for finding waiver inappropriate: that Mr. Doyle "knew or should have known that he was receiving incorrect ... benefits[.]" Tr. at 16, Finding 2. No evidence indicates Plaintiff was told he would need to recon-

---

**2.** At the hearing, the judge at the beginning of one series of statements, asserted "it says here you were aware that your wages would change the amount of your SSI check." *Id.* at 92. Apparently, however, he was referring to a conclusion made by the administration, *see id.* at 53, not direct evidence of Plaintiff's knowledge.

tact the administration before cashing any further checks. His reported assumption that the checks were appropriate "since he had already reported his work[,]" *id.* at 58, has not been refuted as unreasonable or disingenuous. Under all the circumstances, it cannot be found the ALJ's Decision is supported by substantial evidence. Therefore, this case must be remanded for further proceedings.

In accordance with the foregoing,

**IT IS ORDERED:**

The Clerk of the Court is directed to enter a judgment pursuant to sentence four of 42 U.S.C. § 405(g) and 1383(c)(3) **REVERSING** the Commissioner's decision and **REMANDING** this matter with instructions to: 1) re-evaluate whether Plaintiff was at fault in causing an overpayment, taking further testimony as necessary; 2) proceed, if appropriate, to an analysis of whether recovery of the overpayment would defeat the purposes of the relevant statute, be against equity and good conscience, or impede the scheme's efficient or effective administration; and 3) conduct any other proceedings deemed proper.